IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN XINSENLIN TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 1:24-cv-5505 <br><br> JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

Plaintiff Shenzhen Xinsenlin Technology Co., Ltd. ("Plaintiff") hereby brings the present action for design patent infringement, unjust enrichment under Illinois state common law, and unfair competition under Illinois state common law against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**I.      JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction). This complaint

also arises under the Trademark Act of 1946, 15 U.S.C. §1051, et seq. ("the Lanham Act"). Accordingly, this Court also has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. §1121(a) and 28 U.S.C. §§1331, 1338(a) & (b), and 1367(a).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented design, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented design from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances,

including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented design, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III. THE PARTIES

4. Plaintiff, Shenzhen Xinsenlin Technology Co., Ltd., is a Chinese company with its principal place of business at 1/F Building C, No. 106, Lijia Road, Henggang Subdistrict, Longgang District, Shenzhen China, and is the owner of the patent asserted in this action.

5. Plaintiff is the owner of all right, title, and interest in U.S. Patent No. ▆▆▆▆ ("Plaintiff's Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

6. Plaintiff's Patent issued on ▆▆▆▆▆▆▆. *See* **Exhibit 1**.

7. Plaintiff's Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

8. Plaintiff's Patent discloses and claims new ornamental design for ▆▆▆▆▆.

9. Plaintiff designs, manufactures, markets, and sells a variety of products related to ▆▆▆▆.

10. Plaintiff sells its products, including products that embody Plaintiff's Patent (collectively, "Plaintiff's Products"), exclusively direct-to-consumer through various online

marketplaces, including on Amazon.com. Plaintiff's Products, including those which embody Plaintiff's Patents can be found at ██████████████████████████████████.

11. Plaintiff provides notice of its patent rights by disclosing the Patent Number in multiple areas of the product description as seen in *Figure 1 and Figure 2*, below.



*Figure 1*



*Figure 2*

12. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

13. The designs of Plaintiff's ▮▮▮▮▮▮ are distinctive and non-functional and identify to consumers that the origin of Plaintiff's ▮▮▮▮▮▮ is Plaintiff. As a result of at least Plaintiff's continuous and extensive use of the designs of its ▮▮▮▮▮▮, Plaintiff's marketing, advertising, and sales of its ▮▮▮▮▮▮, and the highly valuable goodwill, secondary meaning,

5

and fame acquired as a result, Plaintiff owns trade dress rights in the design and appearance of its ▆▆▆▆, which consumers have come to uniquely associate with Plaintiff.

14. Exemplary images of Plaintiff's ▆▆▆▆ are shown below:



15. Plaintiff has trade rights in the overall look, design, and appearance of the ▆▆▆▆ ▆▆▆▆, which includes the design ▆▆▆▆ ▆▆▆▆; the design ▆▆▆▆ ▆▆▆▆; the design ▆▆▆▆; and the design, ▆▆▆▆ ▆▆▆▆, just to name a few (collectively referred to herein as "▆▆▆▆ Trade Dress").

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), SHEIN Distribution Corporation ("Shein"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

17. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

18. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin

selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

19. The very same concerns regarding anonymity, offshore online infringement, multi-storefront infringers, and slow and ineffective marketplace procedures for intellectual property rights holders, impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

21. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit

cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patent, and none of the Defendants are authorized retailers of Plaintiff's Products.

22. E-commerce store operators, like Defendants, commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E- commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized

Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

26. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

27. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patent in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use and/or manufacturing of the ornamental designs claimed in Plaintiff's Patent in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights, loss of current and future sales, loss of online traffic due to infringing listings, and is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT OF PLAINTIFF'S PATENT (15 U.S.C. § 271)

29. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

31. As shown, by way of example, in the claim chart attached as **Exhibit 6**, the products being sold by Defendants incorporate each of the design elements claimed in Plaintiff's Patent. Accordingly, the product being sold by Defendants infringe upon Plaintiff's Patent.

32. Specifically, Defendants offer for sale, sell, and/or import into the United States for subsequent resale or use Unauthorized Products that infringe directly and/or indirectly the ornamental design claimed in the Patent.

33. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe Plaintiff's Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented design as well as the lost sales and loss of repeat sales stemming from the infringing acts.

34. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

35. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of Plaintiff's Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

36. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## TRADE DRESS INFRINGEMENT UNDER §43(a) OF
## THE LANHAM ACT, 15 U.S.C. §1125(a)

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Unauthorized Products violate §43(a) of the Lanham Act,

15 U.S.C. §1125(a), by infringing Plaintiff's ▮▮▮▮ Trade Dress. Defendants' use of Plaintiff's ▮▮▮▮ Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the Unauthorized Products, at least by creating the false and misleading impression that the Unauthorized Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

39. Plaintiff's ▮▮▮▮ Trade Dress is entitled to protection under the Lanham Act. Plaintiff's ▮▮▮▮ Trade Dress includes unique, distinctive, and non-functional designs. Plaintiff has extensively and continuously promoted and used its ▮▮▮▮ Trade Dress in the United States. Through that extensive and continuous use, Plaintiff's ▮▮▮▮ Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's ▮▮▮▮. Moreover, Plaintiff's ▮▮▮▮ Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiff's ▮▮▮▮ Trade Dress acquired this secondary meaning before Defendants commended their unlawful use of Plaintiff's ▮▮▮▮ Trade Dress.

40. Defendants' use of Plaintiff's ▮▮▮▮ Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's ▮▮▮▮ Trade Dress.

41. On information and belief, Defendants' use of Plaintiff's ▮▮▮▮ Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Unauthorized Products to Plaintiff's ▮▮▮▮ Trade Dress and by Defendants' continuing disregard for Plaintiff's rights.

42. Plaintiff is entitled to injunctive relief, and Plaintiff is entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§1125(a), 1116, and 1117.

## COUNT III
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER §43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a)

43. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44. Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Unauthorized Products in direct competition with Plaintiff, violate §43(a) of the Lanham Act, 15 U.S.C. §1125(a), and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Plaintiff through Defendants' use of Plaintiff's ▮▮▮▮▮ Trade Dress, and because such use is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of Defendants' Unauthorized Products, at least by creating the false and misleading impression that their Unauthorized Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

45. Plaintiff's ▮▮▮▮▮ trade dress is entitled to protection under the Lanham Act. Plaintiff's ▮▮▮▮▮ Trade Dress includes unique, distinctive, and non-functional designs. Plaintiff has extensively and continuously promoted and used its ▮▮▮▮▮ Trade Dress in the United States. Through that extensive and continuous use, Plaintiff's ▮▮▮▮▮ Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's ▮▮▮▮▮. Moreover, Plaintiff's ▮▮▮▮▮ Trade Dress has also acquired substantial secondary meaning in the

14

marketplace. Moreover, Plaintiff's ▮▮▮▮▮▮ Trade Dress acquired this secondary meaning before Defendants commended their unlawful use of Plaintiff's ▮▮▮▮▮▮ Trade Dress.

46. Defendants' use of Plaintiff's ▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's ▮▮▮▮▮▮ Trade Dress.

47. On information and belief, Defendants' use of Plaintiff's ▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Unauthorized Products to Plaintiff's ▮▮▮▮▮▮ Trade Dress and by Defendants' continuing disregard for Plaintiff's rights.

48. Plaintiff is entitled to injunctive relief, and Plaintiff is also entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§1125(a), 1116, and 1117.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent

2) An injunction against further infringement of Plaintiff's ▮▮▮▮▮▮ Trade Dress and further acts of unfair competition by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all other in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the Unauthorized Products, or any other products that use a copy, reproduction, or colorable imitation of Plaintiff's ▮▮▮▮▮▮ Trade Dress, pursuant to at least 15 U.S.C. §1116.

3) An order directing Defendants to recall all Unauthorized Products sold and/or distributed and provide a full refund for all recalled Unauthorized Products.

4) An order directing Defendants to publish a public notice providing proper attribution of Plaintiff's ▮▮▮▮▮▮ Trade Dress to Plaintiff, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Unauthorized Products are recalled and to whom the Unauthorized Products are sold.

5) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as AliExpress, Amazon, eBay, Shein, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

6) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

7) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

8) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, including Defendants' profits pursuant to 35 U.S.C. § 289 and any other damages as appropriate under 35 U.S.C. § 284, together with interests and costs.

9) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of upon Plaintiff's Patent.

10) A finding that this case is exceptional under 35 U.S.C. § 285.

11) An award of Defendants' profits, Plaintiff's actual damages, enhanced damages, punitive damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§1125(a), 1116, and 1117.

12) A finding that Defendants committed acts of unfair competition in violation of §1125(a) of Title 15 in the United States Code.

13) That Plaintiff be awarded its reasonable attorneys' fees and costs.

14) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 28, 2024　　　　　　　　　　　　Respectfully submitted,

/s/ Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
Sameeul Haque

shaque@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Telephone: (847) 969-9123
Facsimile: (847) 969-9124

*Attorneys for Plaintiff, Shenzhen Xinsenlin Technology Co., Ltd.,*

**VERIFICATION**

I, Wenjing Li, hereby certify as follows:

1. I am the CEO for Shenzhen Xinsenlin Technology Co., Ltd Co., Ltd. As such, I am authorized to make this Verification on Shenzhen Xinsenlin Technology Co., Ltd Co., Ltd.'s behalf.

2. I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in _____Shenzhen_____ on June __28___, 2024.

*Wenjing Li*

_____

Wenjing Li
CEO